IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALEX JOSEPH and JOEL D. JOSEPH,  :
    Plaintiffs  :
      :
v.  :    CIVIL NO. AMD 04-4069
      :
MICHAEL W. SKOJEC, et al.,  :
    Defendants  :

...o0o...

MEMORANDUM OPINION

Now pending is the Motion for Attorney's Fees and Expenses filed on behalf of the non-governmental defendants in this action filed by plaintiffs Alex and Joel D. Joseph pursuant to 42 U.S.C. § 1983. In a Memorandum Opinion filed on February 22, 2005, the court granted defendants' motion to dismiss the federal claim and dismissed that claim with prejudice. The state law claims were dismissed without prejudice. Plaintiff has noted a timely appeal from that order.

Plaintiff Joel D. Joseph, Esq., is an attorney who filed the action on his own behalf and on behalf of his 17 year old son, Alex. The plaintiffs took umbrage at a letter delivered on behalf of the management company of their apartment building, defendant Bozzuto Management Company, by an attorney, defendant Michael W. Skojec, Esq. The letter admonished the Josephs for alleged improper behavior by the younger plaintiff, and threatened that if there were "any further violations of [lease] . . . you will be immediately notified that the lease is terminated and appropriate legal action taken to enforce the termination." *Id*.

Upon his receipt of the letter, plaintiff Joel Joseph wrote to Skojec announcing his intention to file this law suit, and described the Skojec letter as "outrageous, illegal, libelous and harassing." In particular, Joel Joseph alleged that the Skojec letter violated the Montgomery County Code, and that it was "threatening, coercive and harassing." Skojec promptly responded to the letter, disputing the plaintiffs' characterization of his first letter. In his response, Skojec stated the following, in part:

> [W]hile the Montgomery County Code permits the distribution of rental housing literature by tenants, it does not address solicitation of other residents in surveys that are delivered into other residents' units without their permission, nor does it prohibit management from asking tenants to present their literature and concerns to management first. If your son was only handling out literature to residents that suggested that the residents encourage management to open the roof deck more often, had your permission as his parent, and had advised management first that he would distribute literature in a way that did not disturb residents, he may have been permitted to do so. But that is not what happened. Apparently, your son was distributing the questionnaires by sliding them under the doors into apartment units. Some of the residents who received them complained to management and asked that the deliveries be immediately stopped.

Compl., Exh. 4, at 1-2.

Thereafter, plaintiffs filed this action. In count one, the sole federal claim, plaintiffs purported to assert a first amendment retaliation claim pursuant to 42 U.S.C. § 1983. Defendants moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), asserting that plaintiffs had not alleged a cognizable first amendment retaliation claim.

In granting the motion to dismiss the first amendment claim with prejudice, I reasoned as follows:

I agree with defendants that plaintiffs have failed to assert a cognizable first amendment retaliation claim. Asserting that they enjoy a "constitutional right to communicate with fellow tenants," plaintiffs contend that that right has been "chilled" by Bozzuto's threat to take legal action against them if they continue to engage in "solicitation" as construed in the Skojec letter. This contention is without merit.

To state a first amendment retaliation claim, plaintiff must allege facts sufficient, if believed, to establish the following elements:

> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Worrell v. Henry,* 219 F.3d 1197, 1212 (10th Cir. 2000) (quotations omitted); *see also DiMeglio v. Haines,* 45 F.3d 790, 806 (4th Cir.1995) ("Not every restriction is sufficient to chill the exercise of First Amendment rights, nor is every restriction actionable, even if retaliatory.").

As a matter of law, under no set of facts properly encompassed and proved under the allegations in this case could "a person of ordinary firmness" experience a chill of his or her first amendment right to communicate with co-tenants at the Metropolitan Apartments. Although Skojec's first letter was stark, his second letter fully explained the basis for the first letter:

> If your son was only handling out literature to residents that suggested that the residents encourage management to open the roof deck more often, had your permission as his parent, and had advised management first that he would distribute literature in a way that did not disturb residents, he may have been permitted to do so. But that is not what happened. Apparently, your son was distributing the questionnaires by sliding them under the doors into apartment units. Some of the residents who received them complained to management and asked that the deliveries be immediately stopped

It is thus clear from the entirety of defendants' communications to plaintiffs regarding plaintiffs' arguable exercise of a first amendment right to communicate with their co-tenants that, as a matter of law, defendants were seeking to accommodate not just the plaintiffs' right to speak, but their co-tenants' "right to be let alone." *Olmstead v. United States,* 277 U.S. 438, 478 (1928) (Brandeis, J., dissenting). In short, as a matter of law, no retaliatory

"chill" to the exercise of first amendment rights arises from the Skojec letters. Mem. Op. at 3-4 (footnote omitted). Defendants have now moved for an award of attorney's fees and costs pursuant to 42 U.S. C. §1988(b). No hearing is necessary.

The standards for an award of attorney's fees and costs to a prevailing defendant under §1988(b) are well-settled:

> As amended, 42 U.S.C. § 1988(b) provides in pertinent part, "In any action or proceeding to enforce a provision of section . . . 1983 the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ."
> Section 1988(b) is part of the Congressional scheme to promote enforcement of constitutional and civil rights law by private parties. *Hughes v. Rowe,* 449 U.S. 5, 14, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *see also Christiansburg Garment Company v. EEOC,* 434 U.S. 412, 418, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978)(setting standard for attorney's fees awards to defendants in actions under Title VII of the Civil Rights Act of 1964). Thus, a different standard applies to determine whether fees will be awarded when a *defendant* prevails. As the Supreme Court explained, "[t]o take the further step of assessing attorney's fees against plaintiffs simply because they do not finally prevail would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote vigorous enforcement . . . ." *Id.* at 422, 98 S.Ct. 694. Congress specifically intended the attorney's fees provision to "make it easier for a plaintiff of limited means to bring a meritorious suit." *Id.* at 420, 98 S.Ct. 694. A second factor cited by the Supreme Court as discouraging fee awards to defendants in civil rights suits is the fact that an attorney's fee award to a prevailing plaintiff is an award "against a violator of federal law." *Id.* at 418, 98 S.Ct. 694.
> The absence of these factors when a defendant prevails in such cases dictates that an award of attorney's fees to a defendant must be based on the "quite different equitable considerations," *id.* at 419, 98 S.Ct. 694, of discouraging groundless lawsuits. *Id.* at 420, 98 S.Ct. 694. Hence, "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Id.* at 421, 98 S.Ct. 694. *See also DeBauche v. Trani,* 191 F.3d 499, 510 (4th Cir.1999); *Bryant Woods Inn, Inc.,* 124 F.3d at 606. "In applying these criteria," the Supreme Court cautioned, "it is

important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg,* 434 U.S. at 421-22, 98 S.Ct. 694.

*Greenspring Racquet Club, Inc. v. Baltimore County, MD*, 77 F.Supp.2d 699, 702 (D. Md. 1999)(footnote omitted), *vacated on other grounds*, 2000 WL 1624496 (4th Cir. Oct. 31, 2000), *cert. denied*, 532 U.S. 957 (2001); *see also Lotz Realty Co., Inc. v. United States Dept. Of Housing and Urban Dev.,* 717 F.2d 929, 932 (4th Cir.1983).

Application of the above principles to this case yields but one conclusion. Particularly in view of the fact that this action was instituted by an attorney acting pro se, the frivolousness of the federal claim brought here is palpable. The court has no hesitation in concluding that an award of attorney's fees and costs is not only warranted but positively imperative as an appropriate response to plaintiffs' vexatiousness.

Plaintiffs have not challenged the hourly rates or the number of hours claims by defendants in their application for fees and cost beyond the conclusory assertion that "[i]f the plaintiffs' complaint was truly frivolous it should not have taken more than 100 hours of lawyers' time to file a motion to dismiss." Defendants claim a total of 150 hours of attorney time (32.6 of which were expended on the fee petition) at hourly rates ranging from $140 to $380, together with a paralegal rate of $120. (Defendants have declined to tease out their hours devoted to the challenge to the federal claim, contending that the state law claims arose from the same core of operative facts.) The total fee requested is $25,288.00, with expenses of $2199.01. Defendants have not separately scheduled the hours for each attorney;

thus, the court is not able to determine, without itself scheduling the work of each attorney, the number of hours devoted to the case by each such attorney. *See* Rules of the United States District Court (Md.), Appendix B, *Rules and Guidelines for Determining Lodestar Attorneys' Fees in Civil Rights and Discrimination Cases*.

The court does not wish to impose an unreasonable burden on the adult plaintiff (and this is so even though the plaintiff claims that his own customary rate is $500 per hour). Nor does the court find it appropriate to make an award for work performed on the state law claims that were dismissed without prejudice. On the other hand, the court is convinced that plaintiff's decision to appeal is of a piece with the misguided decision to file this action in the first instance. Accordingly, on the basis of whole record, and in the exercise of an informed discretion, the court shall make a partial award of fees, for 55 attorney hours at the blended rate of $250 per hour. Thus, the award shall be in the amount of $13,750, together with costs of $2199.01. An order follows.

Filed: April 22, 2005                                      /s/
                                                ANDRE M. DAVIS
                                                United States District Judge